No. 17-1548

# In the United States Court of Appeals for the Fourth Circuit

———————————

STEPHEN N. SIX; DARREN TODD KAPLAN; JOHN AUSTIN MOORE;
STUEVE SIEGEL HANSON LLP; AND THE DARREN KAPLAN LAW FIRM, P.C.,
APPELLANTS

*v.*

GENERATIONS FEDERAL CREDIT UNION, APPELLEE

———————————

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
(CIV. NO. 13-897) (THE HONORABLE CATHERINE C. EAGLES, J.)*

———————————

**BRIEF OF APPELLANTS**

———————————

KANNON K. SHANMUGAM
JOHN S. WILLIAMS
WILLIAM T. MARKS
WILLIAMS & CONNOLLY LLP
*725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000
kshanmugam@wc.com*

## CORPORATE DISCLOSURE STATEMENT

Appellants are Stephen N. Six; Darren Todd Kaplan; John Austin Moore; Stueve Siegel Hanson LLP; and the Darren Kaplan Law Firm, P.C. Appellants Stueve Segal Hanson LLP and the Darren Kaplan Law Firm, P.C., have no parent corporations, and no publicly held company owns 10% or more of their stock. Appellants are not aware of any other entity that has a direct financial interest in the outcome of this litigation.

# TABLE OF CONTENTS

Page

Statement of jurisdiction..................................................................1

Statement of the issues ..................................................................1

Statutory provision involved............................................................2

Statement of the case .....................................................................2

    A.    Background............................................................3

    B.    Complaint..............................................................5

    C.    Motion to dismiss ................................................6

    D.    Renewed motion to dismiss and interlocutory appeal.................12

    E.    Arbitration-related discovery ...........................14

    F.    Sanctions proceedings ......................................18

Summary of argument ..................................................................24

Standard of review........................................................................26

Argument......................................................................................27

    I.    The district court erred by imposing on counsel a duty either to waive the requirement of authentication or to produce any documents that bore on the issue of authenticity .......................................................29

        A.    Counsel may object to a party's failure to authenticate a document it proffers ...................29

        B.    Counsel had no affirmative duty to disclose the version of the Western Sky agreement obtained from their client.......................................................39

            1.    The applicable ethical rules did not impose an affirmative duty to disclose .........................39

            2.    The Federal Rules of Civil Procedure do not impose an affirmative duty to produce any documents before the initial discovery conference................................................42

ii

Page

Table of contents—continued:

    II.    The district court further erred by holding that counsel could not object in good faith to Generations' renewed motion to dismiss ...................................................................44

    III.    The district court clearly erred by finding clear and convincing evidence that counsel acted in bad faith ....................48

Conclusion ...........................................................................................56

## TABLE OF AUTHORITIES

### CASES

*Adkins* v. *Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002) ........................30, 34

*Akeva L.L.C.* v. *Adidas America, Inc.*,
    385 F. Supp. 2d 559 (M.D.N.C. 2005) ...........................................12

*American Canoe Ass'n* v. *Murphy Farms, Inc.*,
    326 F.3d 505 (4th Cir. 2003)...........................................................45

*Association of American Physicians & Surgeons, Inc.*
    v. *Clinton*, 187 F.3d 655 (D.C. Cir. 1999) ....................................49

*Baulch* v. *Johns*, 70 F.3d 813 (5th Cir. 1995)...........................................36

*Belk, Inc.* v. *Meyer Corp.*, 679 F.3d 146 (4th Cir. 2012) ....................................26

*BEM I, L.L.C.* v. *Anthropologie, Inc.*,
    301 F.3d 548 (7th Cir. 2002)......................................................41, 42

*Blue* v. *U.S. Department of Army*, 914 F.2d 525 (4th Cir. 1990) ....................51

*CACI International, Inc.* v. *St. Paul Fire & Marine Insurance*,
    566 F.3d 150 (4th Cir. 2009)...........................................................32

*Carlson* v. *Boston Scientific Corp.*,
    856 F.3d 320 (4th Cir. 2017)...........................................................45

*Craig* v. *Kessing*, 253 S.E.2d 264 (N.C. 1979)........................................37

Page

Cases—continued:

*Cramer* v. *NEC Corp. of America*,
    496 Fed. Appx. 461 (5th Cir. 2012).................................35

*Cray Communications, Inc.* v. *Novatel Computer Systems, Inc.*,
    33 F.3d 390 (4th Cir. 1994).....................................32, 45

*Crowe* v. *Smith*, 261 F.3d 558 (5th Cir. 2001) .....................................49

*EEOC* v. *Great Steaks, Inc.*, 667 F.3d 510 (4th Cir. 2012) ........................26, 27

*Eisemann* v. *Greene*, 204 F.3d 393 (2d Cir. 2000)..............................49

*Estate of Lisle* v. *Commissioner*, 341 F.3d 364 (5th Cir. 2003),
    *modified on other grounds*, 431 F.3d 439 (5th Cir. 2005) ...........................49

*Fenje* v. *Feld*, 301 F. Supp. 2d 781 (N.D. Ill. 2003),
    *aff'd*, 398 F.3d 620 (7th Cir. 2005) ....................................36

*Figueroa* v. *Mazza*, 825 F.3d 89 (2d Cir. 2016) ................................33

*Galloway* v. *Santander Consumer USA, Inc.*,
    819 F.3d 79 (4th Cir. 2016).....................................30

*Glass* v. *Pfeffer*, 849 F.2d 1261 (10th Cir. 1988)................................51

*Greater Baltimore Center for Pregnancy Concerns, Inc.* v.
    *Mayor & City Council of Baltimore*,
    721 F.3d 264 (4th Cir. 2013)....................................43

*Hayes* v. *Delbert Services Corp.*, 811 F.3d 666 (4th Cir. 2016)...............*passim*

*Hensley* v. *Alcon Laboratories, Inc.*, 277 F.3d 535 (4th Cir. 2002)..................28

*Howe, In re*, 800 F.2d 1251 (4th Cir. 1986) ......................................26

*Hunter* v. *Earthgrains Co. Bakery*,
    281 F.3d 144 (4th Cir. 2002)........................................29, 30, 36, 45

Page

Cases—continued:

*Inetianbor* v. *CashCall, Inc.*,
    768 F.3d 1346 (11th Cir. 2014)........................................................15

*Interstate Steel Setters, Inc.*, *In re*,
    65 B.R. 312 (Bankr. N.D. Ill. 1986)................................................36

*Jackson* v. *Payday Financial, LLC*,
    764 F.3d 765 (7th Cir. 2014)............................................................15

*Jemsek Clinic, P.A.*, *In re*, 850 F.3d 150 (4th Cir. 2017)..............................32, 42

*Jiminez* v. *Mary Washington College*, 57 F.3d 369 (4th Cir. 1995)............27, 50

*Lawyers Title Insurance* v. *Doubletree Partners, L.P.*,
    739 F.3d 848 (5th Cir. 2014)............................................................48

*Lepore* v. *Vidockler*, 792 F.2d 272 (1st Cir. 1986) ...................................33

*McConathy* v. *Dr. Pepper/Seven Up Corp.*,
    131 F.3d 558 (5th Cir. 1998)............................................................34

*Miller* v. *Target Corp.*, Civ. No. 15-10721, 2017 WL 74276
    (D. Mass. Jan. 6, 2017)....................................................................53

*Moses* v. *CashCall, Inc.*, 781 F.3d 63 (4th Cir. 2015) ............................15

*Musacchio* v. *United States*, 136 S. Ct. 709 (2016) ............................45

*Ortiz* v. *Jordan*, 562 U.S. 180 (2011)........................................................33

*Parsi* v. *Daioleslam*, 778 F.3d 116 (D.C. Cir. 2015)..............................48

*Pleasurecraft Marine Engine Co.* v. *Thermo Power Corp.*,
    272 F.3d 654 (4th Cir. 2001)............................................................33

*Ray Communications, Inc.* v. *Clear Channel Communications,*
    *Inc.*, 673 F.3d 294 (4th Cir. 2012)..................................................31

*RGI, Inc.* v. *Unified Industries, Inc.*, 963 F.2d 658 (4th Cir. 1992) ...............45

Page

Cases—continued:

*Silvestri* v. *General Motors Corp.*, 271 F.3d 583 (4th Cir. 2001).......................28

*Slaughter* v. *Swicegood*, 591 S.E.2d 577 (N.C. Ct. App. 2004) .........................30

*Strag* v. *Board of Trustees, Craven Community College*,
55 F.3d 943 (4th Cir. 1995)................................................................28

*Taylor* v. *Principi*, 141 Fed. Appx. 705 (10th Cir. 2005)..................................35

*Thomas* v. *Ford Motor Co.*, 244 Fed. Appx. 535 (4th Cir. 2007) .....................27

*Tiverton Board of License Commissioners* v. *Pastore*,
469 U.S. 238 (1985)...........................................................................41

*Tuggerson* v. *Henderson*, 36 Fed. Appx. 605 (9th Cir. 2002)...........................35

*United States* v. *Branch*, 970 F.2d 1368 (4th Cir. 1992)...................................31

*United States* v. *Caldwell*, 776 F.2d 989 (11th Cir. 1985)................................31

*United States* v. *Hassan*, 742 F.3d 104 (4th Cir. 2014) ......................................8

*United States* v. *Horton*, 693 F.3d 463 (4th Cir. 2012).....................................27

*United States* v. *Kaixiang Zhu*, 854 F.3d 247 (4th Cir. 2017).........................31

*United States* v. *Shaffer Equipment Co.*,
11 F.3d 450 (4th Cir. 1993)........................................................41, 42

*Washington* v. *Follin*, Civ. No. 14-416, 2016 WL 1614166
(D.S.C. Apr. 22, 2016) ......................................................................54

*Whitney* v. *Wyman*, 101 U.S. 392 (1879)..........................................................37

*Williams* v. *Professional Transportation Inc.*,
294 F.3d 607 (4th Cir. 2002)............................................................27

*Willis* v. *Town of Marshall*, 426 F.3d 251 (4th Cir. 2005).................................43

Page

Cases—continued:

*Wolters Kluwer Financial Services, Inc.* v. *Scivantage,*
564 F.3d 110 (2d Cir. 2009) ................................................51

*Zurich North America* v. *Matrix Service, Inc.,*
426 F.3d 1281 (10th Cir. 2005)........................................33

## STATUTES AND RULES

Racketeer Influenced and Corrupt Practices Act,
18 U.S.C. §§ 1961-1968 ................................................6

28 U.S.C. § 1291 ................................................................1

28 U.S.C. § 1331 ................................................................1

28 U.S.C. § 1332 ................................................................1

28 U.S.C. § 1367 ................................................................1

28 U.S.C. § 1927 ......................................................2, 27, 28, 48

N.C. Gen. Stat. § 24-1.1(a) ..............................................4

N.C. Gen. Stat. § 24-1.1(c) ..............................................5

N.C. Gen. Stat. § 53-166(a) ..............................................5

N.C. Gen. Stat. § 53-168(a) ..............................................5

Fed. R. App. P. 34(a) ........................................................46

Fed. R. Civ. P., Title V ....................................................42

Fed. R. Civ. P. 11 ..............................................................27

Fed. R. Civ. P. 26(a)(1)(C)................................................43

Fed. R. Civ. P. 26(d)(1)......................................................43

Fed. R. Civ. P. 26(f) ..........................................................43

Page

Statutes and rules—continued:

Fed. R. Civ. P. 34(a) ................................................................43

Fed. R. Civ. P. 36(a)(1)(B) .....................................................35

Fed. R. Civ. P. 37(c)(2) ...........................................................35

Fed. R. Civ. P. 54(b) .........................................................*passim*

Fed. R. Evid. 803(6) ..................................................................8

Fed. R. Evid. 901 ....................................................................29

Fed. R. Evid. 901(a) .......................................................7, 8, 31

Fed. R. Evid. 902(11) ................................................................8

M.D.N.C. Local Rule 83.10e(b) ..............................................39

## MISCELLANEOUS

Model Rule of Prof'l Conduct 3.3(a)(1) ..................................37

N.C. Rule of Prof'l Conduct 3.3 ..............................................39

N.C. Rule of Prof'l Conduct 3.3(a)(1) .....................................40

N.C. Rule of Prof'l Conduct 3.3(d) ..........................................40

N.C. Rule of Prof'l Conduct 7.2(a) (1995) ..............................41

N.C. State Bar, Ethics Op. RPC 230 (1996), 1996 WL 282163 ..................40, 41

Temporary Order to Cease and Desist, *In re Delbert Services Corp.*, Massachussetts Commissioner of Banks (Apr. 4, 2013) <tinyurl.com/delbertorder> ...............................................6

Charles Alan Wright et al., *Federal Practice and Procedure* (various editions) ..............................................................31, 43

## STATEMENT OF JURISDICTION

This appeal arises from an order imposing sanctions on appellants, who were attorneys for plaintiff James Dillon in the proceedings below. The district court ordered appellants to pay a monetary sanction to defendant-appellee Generations Community Federal Credit Union (Generations) on February 10, 2017. J.A. 1431-1432.[1] Dillon subsequently settled his claims with Generations, and the district court entered partial final judgment under Federal Rule of Civil Procedure 54(b) on March 28, 2017. J.A. 1436-1438. Appellants filed a timely notice of appeal on April 24, 2017. *See* J.A. 1439-1440. The district court had jurisdiction over the underlying dispute under 28 U.S.C. §§ 1331, 1332, and 1367, and this Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.    Whether the district court erred as a matter of law by holding that appellants could not object in good faith to appellee's failure to authenticate a purported copy of an online agreement attached to a motion to dismiss without simultaneously producing their similar version of the agreement,

---

[1] Mr. Dillon named Generations as "Generations Federal Credit Union" in his complaint. J.A. 36. Generations later noted that its proper name is "Generations *Community* Federal Credit Union." J.A. 413 (emphasis added). Counsel for appellants have notified the Clerk's Office of this issue.

which tended to support but did not establish the authenticity of appellee's version.

2.    Whether the district court erred as a matter of law by holding that appellants, after prevailing on their authentication objection, could not object in good faith to appellee's renewed motion without producing their version of the loan agreement.

3.    Whether the district court clearly erred in finding that appellants had acted in bad faith during the proceedings below.

## STATUTORY PROVISION INVOLVED

Section 1927 of Title 28 of the United States Code provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

## STATEMENT OF THE CASE

This case involves an unprecedented sanctions order imposed by a district court in this circuit for conduct that is entirely permissible in our adversary system.  The sanctions order arose from conduct by counsel in opposing a motion to dismiss.  In support of that motion, opposing counsel had proffered an unsigned, purported version of an online contract containing an arbitration clause, but had provided no further declaration or supporting affidavits to support the authenticity of the contract.  Sanctioned counsel—

appellants here—objected that opposing counsel had failed to meet the burden of authenticating the document under the Federal Rules of Evidence. In the course of doing so, sanctioned counsel did not disclose that their client had sent them a similar document. The district court determined that counsel's conduct, as well as counsel's subsequent objection to a renewed motion, was vexatious and had been taken in bad faith. That ruling rested on errors of law and fact, and the district court's order imposing sanctions should therefore be reversed.

### A.    Background

1.    Stueve Siegel Hanson LLP is a 31-attorney law firm based in Kansas City, Missouri, that represents business and individuals in civil lawsuits across the country. Two of the firm's attorneys, Steve Six and Austin Moore, represented plaintiff James Dillon before the district court in this action. Mr. Six is a partner at Stueve Siegel who has practiced law for 23 years. J.A. 805. Before joining Stueve Siegel, he served as a state-court judge and then as Kansas Attorney General, and he recently served as president of the Kansas Bar Association. J.A. 806. Mr. Six is a member of the Kansas and Missouri state bars. J.A. 805. Mr. Moore is an associate at Stueve Siegel and is a member of the Missouri and Illinois bars. J.A. 816.

Mr. Dillon was also represented by attorney Darren Kaplan. Mr. Kaplan is the principal shareholder of the Darren Kaplan Law Firm, P.C.,

based in New York City.  J.A. 793.  He has practiced law for 25 years and is a member of the New York, Connecticut, and Georgia bars.  *Id.*  None of the three attorneys has previously been sanctioned.  J.A. 771, 794.

2.    Mr. Dillon, the plaintiff in the underlying lawsuit, is a North Carolina resident.  J.A. 39.  In December 2012, Mr. Dillon fell behind on his bills despite working two jobs.  J.A. 1248, 1258-1259, 1261.  Mr. Dillon turned to the Internet to remedy his financial troubles:  he ran a search for "payday lenders," clicked on one of the results, filled out the necessary forms, and soon received a direct deposit in his bank account.  J.A. 64, 1225, 1260, 1271-1272.  Mr. Dillon repeated that process four additional times with various payday lenders over the following months.  J.A. 64-66, 1226, 1247-1248, 1267-1268, 1307-1308.

One of Dillon's lenders was Western Sky Financial, LLC, a now-defunct payday lender which operated from the Cheyenne River Indian Reservation in South Dakota.  J.A. 42-43; *see Hayes* v. *Delbert Services Corp.*, 811 F.3d 666, 668 (4th Cir. 2016).  In May 2013, Dillon applied for a $2,600 loan through Western Sky's website and was approved.  Dillon was to repay the loan at an annual interest rate of 139%, in monthly installments automatically debited from his bank account.  J.A. 332, 1381.

In North Carolina, lenders must obtain a special license to charge interest over 16% on short-term loans of less than $15,000.  *See* N.C. Gen. Stat.

§§ 24-1.1(a) & (c), 53-166(a), 53-168(a).  It is undisputed that Western Sky had no such license.  J.A. 103.  Western Sky had a long history of noncompliance with applicable state and federal laws:  a number of consumer-protection agencies took action against Western Sky before it closed.  J.A. 650, 676-680.

### B.    Complaint

Mr. Dillon retained Mr. Six, Mr. Moore, Mr. Kaplan, and their law firms (hereafter "counsel") to assess his legal rights with respect to his payday loans.  In September 2013, a paralegal from Stueve Siegel contacted Mr. Dillon as part of the client-intake process to obtain documents related to his loans.  J.A. 837-838.  On September 24, Mr. Dillon responded that he "only ha[d] bank statements" showing the Western Sky transactions; he provided those statements to counsel.  J.A. 842-855.  Mr. Moore followed up with Mr. Dillon and believes he asked Mr. Dillon to search for documents available from other sources.  J.A. 838.

On October 1, 2013, Mr. Dillon faxed a purported version of his Western Sky loan agreement to Mr. Moore.  J.A. 520-525, 839.  That document, however, did not come from Western Sky's website; instead, the bottom of the fax displays a partial web address that appears to read "http://intranet.delbertservices.com."  J.A. 522-524, 647.  Delbert Services is a servicing agent that would often service loans originated by Western Sky

after they had been transferred through other firms. *See Hayes*, 811 F.3d at 669 (explaining that Delbert Services became the servicing agent for a loan only after the loan was transferred to one firm and then a second); Temporary Order to Cease and Desist ¶¶ 18-19, *In re Delbert Services Corp.*, Massachusetts Commissioner of Banks (Apr. 4, 2013) <tinyurl.com/delbert-order>.

Soon after, Mr. Dillon, represented by counsel, filed a putative class action against four intermediary banks that helped his payday lenders process electronic transfers to and from his bank account. J.A. 36. Of particular relevance here, the complaint alleged that appellee Generations Community Federal Credit Union assisted Western Sky in connection with Mr. Dillon's loan. J.A. 68-69. On behalf of a nationwide class, the complaint alleged that Generations and the other defendants violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, by helping the payday lenders reach consumers in jurisdictions such as North Carolina that prohibit high-interest payday lending. *See* J.A. 72-100. On behalf of a North Carolina subclass, the complaint also asserted statutory and common-law claims under North Carolina law. J.A. 101-114.

### C.    Motion To Dismiss

1.    In response to the complaint, three defendants, including Generations, filed motions to dismiss or to compel arbitration based on the asserted

existence of a binding arbitration agreement. J.A. 121, 171, 174. Generations' motion turned on a purported version of a loan agreement between Western Sky and Mr. Dillon. J.A. 125-130. The agreement had not been signed, however, and Generations did not provide a declaration or any other authenticating evidence demonstrating that Dillon agreed to that version of the agreement when he went on Western Sky's website and accepted the loan. *See* Fed. R. Evid. 901(a). The other two defendants similarly attached unsigned, unauthenticated copies of arbitration agreements to which Mr. Dillon had purportedly agreed. J.A. 197.

Under the terms of the version of the agreement proffered by Generations, Mr. Dillon was required to submit any legal claims related to his loan to arbitration; the Cheyenne River Sioux Tribe Nation would conduct the arbitration under tribal law; and only tribal courts would have jurisdiction over challenges to the agreement itself. J.A. 125, 127-129. Generations argued that the agreement barred Mr. Dillon's claims against the bank, even though Generations was not a signatory to the agreement, on the theory that Mr. Dillon was equitably estopped from arguing that the agreement did not apply to his claim. J.A. 137-149. That was so, Generations argued, because Mr. Dillon's claim depended on the existence of the loan agreement and because he alleged "substantially interdependent and concerted misconduct" by Gen-

erations and the counterparty to the agreement, Western Sky.  J.A. 140-141 (citation omitted).

The version of the agreement Mr. Dillon had sent to counsel was identical, except that it displayed the Delbert Services web address.  J.A. 125-130, 520-525.  Both versions, however, suffered from the same problem:  both came from entities other than Western Sky, without any evidence about how or even whether the documents had originated at Western Sky.  As to each version, therefore, the question remained whether the document was what it purported to be:  a copy of the agreement Mr. Dillon clicked through when he accepted the loan from Western Sky.

In opposing Generations' motion to dismiss, counsel primarily disputed the applicability of equitable estoppel.  J.A. 153-157, 158-169.  In a single paragraph, however, counsel also raised an evidentiary objection to the version of the agreement Generations attached as an exhibit.  J.A. 153.  "The [agreement] does not bear [Dillon's] signature (or any signature)," counsel argued, and Generations "fail[ed] to offer any explanation as to how it came into possession of the [agreement] or whether it is authentic."  *Id.*  Without authentication, counsel continued, the document could not qualify as a business record and was thus inadmissible hearsay.  *Id.*; *see* Fed. R. Evid. 803(6), 901(a), 902(11); *United States* v. *Hassan*, 742 F.3d 104, 133 (4th Cir. 2014).

Counsel mounted similar objections to the other defendants' motions.  J.A.
197.

In its reply brief, Generations did not respond by producing a declara-
tion or any other form of authenticating evidence.  Nor did Generations re-
quest time to conduct arbitration-related discovery.  Instead, Generations
contended that Mr. Dillon had "not dispute[d] the authenticity of the  .  .  .
[a]greement" and that "a court may consider  .  .  .  documents as to which
there is no dispute as to authenticity."  J.A. 179-180.

The district court scheduled a three-hour hearing on Generations' mo-
tion to dismiss and other defendants' motions, which collectively raised nine
issues.  J.A. 192-193, 203.  The district court began the hearing by stating as
follows:

> [THE COURT:]  I read the plaintiff's brief as challenging [the arbitra-
> tion agreements'] authenticity.  It seemed to me to be pretty clear.
> They said things like there is no proof these are authentic and we ob-
> ject.

J.A. 206.  Defense counsel responded by accurately characterizing plaintiff's
objection:

> [DEFENSE COUNSEL:]  I don't read the plaintiff's oppositions as
> saying these are not the loan agreements.  Instead, I read them as say-
> ing maybe these are not the loan agreements.

J.A. 207.  Counsel for Generations (who had not previously argued) later re-
iterated the point:

9

> [DEFENSE COUNSEL:]  [W]hat the plaintiff[] say[s], Your Honor, is that Defendant Generations has not explained how it came into possession of the loan agreement or whether it is authentic   .  .  .  .

J.A. 220.  Much of defense counsel's presentation on the arbitration issue, however, focused on equitable estoppel.  J.A. 213-219.

After defense counsel finished, Mr. Six argued for Mr. Dillon.  Mr. Six began his presentation as follows:

> [MR. SIX:]  I will start with the first issue Your Honor raised.  It is the defendant's burden to bring contracts that seek to divest Mr. Dillon's right to appear before this Court.  It is their burden to show that they are the actual contracts.  It is not our burden.
>
> We drafted the complaint—I drafted the complaint.  I asked Mr. Dillon, for instance, with Vin Capital [another payday lender], do you have a loan agreement?  He went on the Internet, clicked through some screens, and got a loan.
>
> I drafted the complaint without the loan agreement.  The claims that we make don't rely on the loan agreement.
>
> THE COURT:  Now, you say that—I mean, I appreciate you don't want to enforce it, but they do rely on it—I mean, you say it's illegal, right, so there has to be a loan agreement?
>
> MR. SIX:  You know, Your Honor, there doesn't.  .  .  .
>
> [The complaint] doesn't rely on the fact there is a loan agreement .  .  .  .

J.A. 221-222.  Like defense counsel, Mr. Six focused primarily on the applicability of equitable estoppel.  J.A. 222-239.  In addressing the argument that Mr. Dillon's claims depended on the loan agreements, Mr. Six relied on the

10

fact that he had drafted the complaint without having the Vin Capital agreement.  J.A. 226, 228-229, 234.

Mr. Six returned to the issue of authentication during two brief exchanges in the latter part of his argument.  Mr. Six had brought a copy of defendants' proffered versions of the loan agreements as exhibits for the court, and he clarified that his reliance on the exhibits did not express a position on whether the agreements were in fact genuine:

> [MR. SIX:]  So in equitable estoppel—and I brought the agreements, and we are talking about them.  I am not suggesting that that means I am telling you they are genuine.  .  .  .  I don't know.  I mean, they may be, but it's not my burden.

J.A. 227.   Also, in response to the district court's question whether he "agree[d] that there is some sort of written agreement somewhere," Mr. Six said, "That's the first issue you raised.  Perhaps, you know—I mean, I suppose if I could find Vin Capital and issue a subpoena to them or— ."  J.A. 229.  The district court interrupted Mr. Six to return to equitable estoppel, and Mr. Six did not further address the subject.  J.A. 229-239.

2.    The district court denied Generations' motion to dismiss (and the other defendants' accompanying motions).  J.A. 196.  Generations, the court determined, had "not met [its] burden to establish the existence of an agreement to arbitrate," because it had failed to present admissible evidence that such an agreement existed.  J.A. 196, 198-201.  Once Mr. Dillon had objected,

the court reasoned, defendants were required to "present[] . . . evidence to support the[ir] contention that the documents presented [we]re in fact the loan agreements referenced in the complaint." J.A. 198. They had not done so, nor had they "s[ought] discovery on the question." J.A. 201. The record was thus "silent" as to authenticity. *See* J.A. 199.

### D.    Renewed Motion To Dismiss And Interlocutory Appeal

1.    A month later, Generations filed a renewed motion to dismiss. Generations recognized that the district court had denied the original motion on authentication grounds; thus, in the interim, it "obtained an affidavit authenticating the [l]oan [a]greement" it had attached to its initial motion. J.A. 325, 326. The other defendants filed similar motions. J.A. 321, 388.

Mr. Dillon opposed those motions as improper motions for reconsideration. Under Federal Rule of Civil Procedure 54(b), counsel argued, a district court can reconsider an interlocutory order only based on a "narrow set of grounds" under the law-of-the-case doctrine, and none of those grounds was applicable here. J.A. 369 (quoting *Akeva L.L.C.* v. *Adidas America, Inc.*, 385 F. Supp. 2d 559, 566 (M.D.N.C. 2005)); *see* J.A. 359-366.

The district court denied Generations' renewed motion (and the accompanying motions of the other defendants). J.A. 394-401. In doing so, the court noted that Generations and the other defendants had made a "strategic choice" "not [to] request discovery or time to develop evidence to authenti-

cate the alleged agreements, even after Mr. Dillon identified the evidentiary deficiency; indeed they affirmatively contended . . . that they had no burden to authenticate the arbitration agreements." J.A. 396, 401.

2.    Generations, along with its co-defendants, appealed the denial of its initial and renewed motions.  Before this Court, defendants argued that the Federal Arbitration Act displaced the law-of-the-case doctrine with respect to reconsideration of denied motions to compel arbitration and that they satisfied the exceptions to the law-of-the-case doctrine in any event.  *See* 14-1728 Br. of Appellants 17-40 (Oct. 22, 2014).  Mr. Dillon disagreed.  *See* 14-1728 Br. of Appellee 20-52 (Nov. 26, 2014).

This Court held oral argument.  During argument, one of the panel members asked Mr. Six whether Mr. Dillon was "challenging the existence of an arbitration agreement . . . as part of the loan agreement."  J.A. 548. In response, Mr. Six stated as follows:

> Yes, we're challenging that.  Under our system, when a piece of evidence is introduced, it's not incumbent on the other party to concede it. We can say, "We want you to establish that this is, in fact, the writing with the arbitration agreement that applies, because these, again, are non-signatories. . . .  Mr. Dillon doesn't have several of these . . . agreements—and—and so he's not in a position to say, yes, in fact, this is the loan agreement or no it's not.  So what we do is put the parties seeking to move the case out of [f]ederal [c]ourt and into arbitration to the burden of establishing that it's a genuine and authentic document.

J.A. 513-514.

13

This Court vacated the district court's order denying the renewed motions and remanded for further proceedings. 787 F.3d 707 (2015). After addressing a jurisdictional issue, *id.* at 713-714, the Court held that a party is not limited "to only one motion [to compel arbitration]" under the Federal Arbitration Act. *Id.* at 715. And because "the [r]enewed [m]otions presented different issues than did the [i]nitial [m]otions," the law-of-the-case doctrine did not apply. *Id.*; *see* J.A. 405-406.

## E.    Arbitration-Related Discovery

1.    On remand, Generations again renewed its motion to dismiss; the other defendants filed similar motions. J.A. 407-436. The parties agreed to delay further briefing on the motions pending arbitration-related discovery. J.A. 437-438.

All parties served formal discovery requests and responses. J.A. 554-622, 1203-1204. Generations served requests for admission on Mr. Dillon as to whether Generations' version of his loan agreement was authentic. J.A. 582. Generations also posed an interrogatory asking whether Mr. Dillon claimed Generations' version was "not authentic." J.A. 564. In a response signed by counsel, Mr. Dillon indicated he was dropping his challenge to the authentication of Generations' version of the loan agreement, conceding that the version was a "true and correct copy of the agreement he electronically clicked-through over the Internet." J.A. 590, 607-608.

14

As counsel later explained, the decision to drop the authentication challenge reflected the fact that, since the initial arbitration motions, numerous federal courts had held that Western Sky's arbitration provisions were unconscionable. *See Jackson* v. *Payday Financial, LLC*, 764 F.3d 765 (7th Cir. 2014); *Inetianbor* v. *CashCall, Inc.*, 768 F.3d 1346 (11th Cir. 2014); *see also Moses* v. *CashCall, Inc.*, 781 F.3d 63, 93-94 (4th Cir. 2015) (Davis, J., concurring in part and dissenting in part). In light of the decisions of those courts (later joined by this Court, *see Hayes*, 811 F.3d at 672-676), counsel determined that there was now a strong unconscionability argument—which, unlike any authenticity argument specific to Mr. Dillon, would be an issue common across the entire class. *See* J.A. 801 & n.4, 811.

2.     After the parties exchanged written discovery but before the parties produced documents, the defendants deposed Mr. Dillon. J.A. 1203-1204, 1210-1215. During Generations' turn for questioning, Generations' counsel presented Mr. Dillon with a copy of the Western Sky loan agreement (without the Delbert Services URL) and asked whether he had a version of that agreement in his possession. Mr. Dillon answered that he did have a copy of that document and initially said that he had "printed it out on the Internet when [he] took out the loan." J.A. 1305. He could recall "no reason" why he printed the Western Sky agreement, but not any of his other loan agreements. *Id.*

15

During a separate line of questioning, Mr. Dillon was asked where he found the previously referenced version of the Western Sky agreement:

Q:    Where—where was that document when you found it?

A:    I think I printed it directly off the Internet.  I didn't get it from my e-mail.

Q:    Did you put it in a folder and then stick it in a drawer at home?

A:    It might have been in a folder.

Q:    Okay, you just—you recall or don't you?

A:    I don't really recall, but it was probably in a—a folder, more likely.

J.A. 1318-1319.  Later, Generations' counsel asked Mr. Dillon where he found the agreement before sending it to his attorneys.  J.A. 1336.  Dillon said, "I think it was in a folder."  *Id.*  Although he stated that the folder was red and unlabeled, Mr. Dillon could not recall whether he actually placed any version of the agreement in a folder.  J.A. 1337.

After Generations' counsel finished, counsel for another defendant began to ask Mr. Dillon questions about when he first printed the version of the Western Sky agreement.  Mr. Dillon responded, "I don't remember when I printed it out."  J.A. 1345; *see* J.A. 1343-1349.  In addition, Mr. Dillon said he did not "remember when [he] gave it to [his] lawyers."  J.A. 1346-1349.

As the questions wore on and objections arose, Mr. Kaplan eventually said to counsel for the other defendant, "there's a perfectly good reason why

16

he would print [the Western Sky] document out and not yours." J.A. 1349. Previously during the deposition, counsel learned that Western Sky had required Mr. Dillon to fax in a copy of a voided check and his driver's license as part of the application process. J.A. 1316-1318. There was no similar evidence that Mr. Dillon's other lenders had required that action. When Mr. Moore examined Mr. Dillon on the subject, he asked: "Is it possible that Western Sky required you to fax in a version of that loan agreement along with your voided check and a copy of your driver's license in order to take out the loan?" Mr. Dillon answered: "Yeah, it's possible." J.A. 1351. Still, Mr. Dillon did not "remember when [he] printed it out," and he did not have a copy of what he faxed. J.A. 1352, 1357.

3.    After the deposition, the parties exchanged documents. J.A. 1203-1204, 1365-1371. Counsel produced the version of the Western Sky agreement from Delbert Services, redacting an accompanying handwritten note from Mr. Dillon and the fax date-and-time stamp indicating when Mr. Dillon sent the document to counsel, which counsel redacted on the basis of privilege. J.A. 701-702; J.A. 833 n.2. In a cover letter, counsel alerted Generations to the redactions. J.A. 699. Later in discovery, counsel produced an unredacted version of the document to Generations. J.A. 517, 520-525, 662.

After the close of arbitration-related discovery, the parties completed briefing on Generations' renewed motion to dismiss. In Mr. Dillon's brief,

counsel again conceded the authenticity of Generations' version of the Western Sky loan agreement, J.A. 446 n.2, and instead attacked the arbitration provision as unconscionable, noting that "several courts of appeal[s] have found [Western Sky] arbitration agreements . . . to be unenforceable." J.A. 453; *see* J.A. 446-458.

F.    **Sanctions Proceedings**

1.    After the motion to dismiss was fully briefed, Generations moved to sanction Mr. Dillon and counsel for failing to concede the authenticity of Generations' version of the loan agreement until after the appeal. J.A. 482-483, 486-487. In Generations' view, such a concession was necessary at the initial motion-to-dismiss stage because Mr. Dillon had a substantively identical version of the agreement and thus "knew for a fact that the version Generations had provided was authentic." J.A. 489. Generations also posited that counsel had misled the court (and this Court) by not disclosing their version while maintaining their authentication objection. J.A. 488-493. As the sanction, Generations sought to strike Mr. Dillon's new unconscionability argument and to recover its attorney's fees. J.A. 497-498.

In response, counsel first argued that a lawyer is under no obligation to concede that an opponent met its burden to authenticate a document because the lawyer possessed evidence that would have helped the opposing party carry its burden. J.A. 625-627. In any event, counsel added, the record re-

vealed objective reasons to believe that the version of the loan agreement in their possession did not establish the authenticity of Generations' version: it had come from the Delbert Services website, not Western Sky's website. J.A. 636-637. Counsel sought its attorney's fees for having to oppose an opportunistic sanctions motion. J.A. 641-643.

2.    The district court denied Generations' renewed motion to dismiss on the ground that the loan agreement's arbitration provision was unconscionable, relying in large part on this Court's holding in *Hayes*, *supra*, that a similar Western Sky loan agreement was unconscionable because it purported to renounce federal law in favor of tribal law. J.A. 707 (citing *Hayes*, 811 F.3d at 675). Because Mr. Dillon's Western Sky agreement suffered from the same defect, the district court refused to enforce it. J.A. 707-709. The district court denied the accompanying motions of the other defendants on similar grounds, defendants filed an interlocutory appeal, and this Court subsequently affirmed. *See* 856 F.3d 330 (2017).[2]

Although it denied Generations' renewed motion to dismiss, the district court took Generations' motion for sanctions under advisement. J.A. 709. Several months later, the district court ordered supplemental briefing. J.A. 710-714. In its order, the court stated that it was "undisputed" that Mr. Dil-

---

[2] Certain defendants, including Generations, settled with Mr. Dillon during the pendency of the appeal to this Court.

lon printed out the Delbert Services version of the agreement "at the time he took out the loan." J.A. 710. In Mr. Dillon's supplemental brief, counsel disputed that proposition. First, the document had a web address from Delbert Services, a third-party loan servicing firm that was often several transactions removed from Western Sky itself. *See, e.g.*, *Hayes*, 811 F.3d at 669. That stood in contrast to documents printed from the Western Sky website, which had a Western Sky web address and the date on which the document had been printed. J.A. 778-779; *see* J.A. 667. Second, Mr. Dillon had not provided the loan agreement with his initial collection of documents in September; at that time, he had stated that the only documents he had related to the loans were bank statements. J.A. 807; *see* J.A. 842. In any event, counsel noted, they had argued only that Generations had not borne its burden of authenticating its version of the loan agreement. *Id.*

In its supplemental-briefing order, the district court also identified statements made by Mr. Six during the oral argument on the initial motion to dismiss regarding how counsel had drafted the complaint without the loan agreement with another of the payday lenders, Vin Capital. J.A. 711. In connection with Mr. Dillon's supplemental brief, Mr. Six submitted a declaration in which he noted that the statements had been made in the context of explaining why equitable estoppel did not apply to Mr. Dillon's claims. J.A. 809. He then went on to state, "If the presentation was confusing, it was my

20

job to make it clear and I take responsibility for not doing a better job." J.A. 810; *see* J.A. 813.

Attached to Mr. Dillon's supplemental brief were expert declarations by Professor Kathryn Webb Bradley, director of legal ethics at Duke School of Law and a former member of the North Carolina Bar Association Professionalism Committee; Professor Donald H. Beskind, head of the trial-skills program at Duke; and Professor Stephen A. Salzburg, a university professor at George Washington University Law School and a member of the Advisory Committee on the Federal Rules of Evidence. J.A. 724-774. All three experts reached the conclusion that the conduct at issue was not sanctionable. J.A. 739, 746, 760.

3.    Notwithstanding those submissions, the district court granted Generations' motion for sanctions. J.A. 915. As an initial matter, the court ruled that a litigant cannot object to an opposing party's failure to authenticate a document that the litigant "knows to be authentic." J.A. 936. The court expressly declined to find that counsel knew Mr. Dillon had printed the version from Western Sky's website when he took out the loan, or even that Mr. Dillon actually did so. J.A. 920 & n.4, 942 n.17. Either way, the court reasoned, counsel was required to produce the Delbert Services version of the agreement when they lodged the initial objection to Generations' failure to authenticate its version of the agreement. J.A. 940-943. The district court

21

also ruled that counsel had a duty not to object to Generations' renewed motion to dismiss, reasoning that the court would have granted reconsideration once the other version of the agreement came out during discovery.  J.A. 949-950.  And the court rejected counsel's argument that they had no duty to produce the Delbert Services version of the agreement before discovery, on a pre-answer motion to dismiss.  J.A. 957.

Picking out various actions taken by counsel over the course of the litigation, the district court proceeded to conclude that counsel intended all along to conceal their copy of the loan agreement.  The court believed that Mr. Six made assertions about drafting the complaint without the Vin Capital agreement in order to mislead the court into believing that he did not have *any* of the loan agreements.  J.A. 943-944.  But the court did not address the relevance of the Vin Capital assertion to defendants' equitable-estoppel argument.  J.A. 213-219.  The court also suggested that counsel acted improperly during discovery by producing the Delbert Services version of the agreement after Mr. Dillon's deposition and with the fax information redacted.  J.A. 950.  But the court did not identify an earlier time at which the document should have been produced.  J.A. 931.  Finally, the district court accused counsel of engaging in *post hoc* reasoning during the sanctions proceedings.  J.A. 945-948.  The court placed great weight on counsel's cross-examination at Mr. Dillon's deposition about whether it was "possible" he

22

printed a version of the loan agreement from the Western Sky website in or-
der to fax it in with his driver's license and a voided check. J.A. 946. But the
court did not mention that Mr. Dillon did not retain that facsimile, or that the
version of the agreement in counsel's possession indicated that Mr. Dillon
had printed it at a later time. *Id.*

4.     After additional briefing, *see* J.A. 1176-1412, the district court
held Mr. Six, Mr. Kaplan, and their respective law firms jointly liable for
$150,000 in attorney's fees to Generations. J.A. 1413. The court held Mr.
Moore jointly liable for $100,000 of that amount, reasoning that he had a
lesser role in directing the litigation as an associate attorney. J.A. 1428-1429.
The total consisted of attorney's fees for Generations' appeal, as well as addi-
tional fees for counsel's defense of its actions during the sanctions proceed-
ings (which the court disparaged as *post hoc* rationalizations). J.A. 1421-
1422.

5.     Mr. Dillon, represented by other counsel, *see* J.A. 1163-1171,
subsequently settled his claims against Generations. J.A. 1433-1434. The
district court then entered partial final judgment under Federal Rule of Civil
Procedure 54(b). J.A. 1436-1438. This appeal follows.

## SUMMARY OF ARGUMENT

The district court in this case imposed an unprecedented sanctions order for conduct by counsel that was entirely permissible. In so doing, the district court abused its discretion, and its order should be vacated.

I.    Counsel argued that Generations had failed to meet its burden of demonstrating that the document it proffered—an alleged copy of the loan agreement between Mr. Dillon and a payday lender—was in fact what it purported to be. The district court initially ruled that counsel's argument had merit, sustaining the authentication objection and later denying Generations' renewed motion to dismiss. The court nevertheless sanctioned counsel on the ground that, while making its authentication objection, counsel had a copy of a version of the agreement that was substantively identical to the version proffered by Generations. The district court's reasoning rests on two straightforward errors of law.

A.    Counsel had a good-faith belief in the objection they made, because it was an objection based on Generations' failure to satisfy its burden to authenticate. Such an objection would be appropriate even where a lawyer knows that the document at issue is in fact authentic. But here, counsel had good reason to doubt that Generations' version (or the version Mr. Dillon had sent to counsel) was authentic, because it was impossible to tell whether ei-

24

ther document was a copy of the actual electronic agreement to which Mr. Dillon had agreed on Western Sky's website.

B.    In addition, counsel was under no obligation to provide the district court with a copy of the version of the agreement that Mr. Dillon had printed. A lawyer raising an argument based on the failure to carry the burden of authentication, especially in response to a motion to dismiss, is not required to place before the Court all evidence that bears on the ultimate substantive issue. Nothing in a lawyer's ethical obligations or the Federal Rules of Civil Procedure requires such a disclosure.

II.    For similar reasons, the district court erred in sanctioning counsel on the ground that counsel had an obligation not to object when Generations filed its renewed motion to dismiss. Counsel had a reasonable basis to argue that such a motion constituted an inappropriate motion for reconsideration that had been made not because any new evidence had been found, but because Generations wanted to correct the defect that counsel had identified with the original motion (and that Generations had elected at the time not to correct). The district court's basis for finding counsel's conduct sanctionable was that, if Generations had moved *again* for reconsideration after counsel had produced the version of the agreement in their possession, counsel would have had to agree that third renewed motion had merit. But it does not follow that counsel lacked a good-faith basis for its objection at the time of the

25

*present* motion.  In any event, counsel would have had substantial arguments against any subsequent motion to dismiss—as evidenced by the fact that such a motion was later denied.

III.    Finally, the district court committed clear error in determining that clear and convincing evidence existed that counsel had acted in bad faith.  That determination was based on the district court's conclusion that counsel intended to conceal the version of the loan agreement that Mr. Dillon had provided to them.  But counsel never withheld the document in violation of any duty to produce it, and it dropped any authentication objection before Mr. Dillon disclosed that version to Generations.  Against those uncontested facts, there is certainly not clear and convincing evidence to support a finding of bad faith.  For that reason as well as the foregoing ones, the district court's sanctions order should be vacated.

## STANDARD OF REVIEW

This Court reviews a district court's sanctions order for abuse of discretion.  *See, e.g., EEOC* v. *Great Steaks, Inc.*, 667 F.3d 510, 522 (4th Cir. 2012); *In re Howe*, 800 F.2d 1251, 1252 (4th Cir. 1986) (per curiam).  A district court abuses its discretion if "its conclusion is guided by erroneous legal principles or rests upon a clearly erroneous factual finding."  *Belk, Inc.* v. *Meyer Corp.*, 679 F.3d 146, 161 (4th Cir. 2012) (internal quotation marks and citation omitted).  Thus, "[i]t is an abuse of discretion for the district court to

commit a legal error[,] . . . and that underlying legal determination is reviewed de novo." *United States* v. *Horton*, 693 F.3d 463, 470 (4th Cir. 2012) (citation omitted). A factual finding will be a ground for reversal if it is "plainly wrong," such that "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Jiminez* v. *Mary Washington College*, 57 F.3d 369, 379 (4th Cir. 1995) (citation omitted).

## ARGUMENT

In this case, the district court imposed sanctions both under 28 U.S.C. § 1927 and under its inherent authority. *See* J.A. 932-935.[3] Under Section 1927, federal courts may order an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred" by the opposing party "because of such conduct." Notably, Section 1927 does not permit sanctions unless an attorney has acted in bad faith; mere negligence will not suffice. *See, e.g.*, *Great Steaks*, 667 F.3d at 522; *Thomas* v. *Ford Motor Co.*, 244 Fed. Appx. 535, 539 (4th Cir. 2007) (per curiam).

A court may also impose sanctions under its inherent authority when a party has acted "in bad faith, vexatiously, or wantonly." *Williams* v. *Profes-*

---

[3] Generations did not seek, and the court did not impose, sanctions under Federal Rule of Civil Procedure 11. *See* J.A. 482.

*sional Transportation Inc.*, 294 F.3d 607, 614 (4th Cir. 2002) (citation omitted). As under Section 1927, a sanction under a court's inherent power is appropriate only in the "extraordinary circumstances" where an attorney acts in "bad faith," *Hensley* v. *Alcon Laboratories, Inc.*, 277 F.3d 535, 543 (4th Cir. 2002), and "abuses the judicial process," *Silvestri* v. *General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (citation omitted). "[B]ecause of [its] very potency," courts must exercise their inherent power "with restraint and discretion." *Strag* v. *Board of Trustees, Craven Community College*, 55 F.3d 943, 955 (4th Cir. 1995) (citation omitted).

Assessed under those standards, the district court's order constitutes an abuse of discretion for three reasons. *First*, the order's central premise— that counsel could not object in good faith to Generations' failure to authenticate the loan agreement without disclosing the version of the agreement in their possession—is incorrect as a matter of law. *Second*, the district court compounded that error by holding that counsel could not object in good faith to Generations' renewed motion to dismiss. *Third*, the district court committed clear error by finding clear and convincing evidence that counsel intentionally hid their version of the agreement from the court and Generations. For each of those reasons, the sanctions order should be vacated.

I.   **THE DISTRICT COURT ERRED BY IMPOSING ON COUNSEL A DUTY EITHER TO WAIVE THE REQUIREMENT OF AUTHENTICATION OR TO PRODUCE ANY DOCUMENTS THAT BORE ON THE ISSUE OF AUTHENTICITY**

A sanctions order that rests on a "materially incorrect view of the relevant law" constitutes an abuse of discretion. *Hunter* v. *Earthgrains Co. Bakery*, 281 F.3d 144, 150 (4th Cir. 2002) (citation omitted). Here, the district court incorrectly ruled, as a matter of law, that counsel could not object in good faith to Generations' failure to authenticate its version of the Western Sky agreement because they possessed a version of the agreement printed from the Delbert Service website. The district court also erred by holding that counsel had a legal duty to disclose their version of the agreement after raising the authentication objection. Those legal errors warrant vacatur.

A.   **Counsel May Object To A Party's Failure To Authenticate A Document It Proffers**

The central premise of the district court's sanctions order is that counsel objected to Generations' failure to authenticate its purported copy of the loan agreement without a good-faith basis for doing so. *See* J.A. 936, 952-957. Generations, however, bore the burden under Federal Rule of Evidence 901 to put forth evidence, on its pre-answer motion to dismiss, of the authenticity of the document it was proffering. It utterly failed to do so. That itself provided counsel with a good-faith basis for their objection. In fact, the district court sustained the objection, determining that Generations had failed to

29

"present[] any evidence to support [its] contention" that its version of the Western Sky agreement was the one Mr. Dillon accepted when he took out the loan. J.A. 198.

As this Court has recognized, "maintaining a legal position to a court is only sanctionable when . . . a reasonable attorney in like circumstances could not have believed his actions to be legally justified." *Hunter*, 281 F.3d at 153 (internal quotation marks and citation omitted). Counsel's legal argument must have had "absolutely no chance of success under the existing precedent" to warrant sanctions. *Id.* (citation omitted). That was decidedly not the case here.

1. Counsel raised their authentication objection in response to Generations' motion to dismiss based on an asserted arbitration clause in the agreement between Mr. Dillon and Western Sky. As the party seeking to compel arbitration, Generations had the ultimate burden of proving that an agreement to arbitrate existed. *See, e.g.*, *Adkins* v. *Labor Ready, Inc.*, 303 F.3d 496, 500-501 (4th Cir. 2002); *Slaughter* v. *Swicegood*, 591 S.E.2d 577, 581 (N.C. Ct. App. 2004). And because the burden-shifting framework on a motion to compel arbitration mirrors that of a motion for summary judgment, *Galloway* v. *Santander Consumer USA, Inc.*, 819 F.3d 79, 85 & n.3 (4th Cir. 2016), Generations had the initial burden of supporting its motion with evidence that "conclusively establish[ed]" its entitlement to arbitration (and

30

thus dismissal). *Ray Communications, Inc.* v. *Clear Channel Communications, Inc.*, 673 F.3d 294, 299 (4th Cir. 2012); *see, e.g.*, 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2727.1, at 492-493 & n.19 (4th ed. 2016) (Wright & Miller).

Generations attempted to satisfy that burden by attaching a purported copy of Mr. Dillon's agreement with Western Sky as an exhibit to its motion. Generations, however, concededly failed to produce any evidence to authenticate the agreement. *See* J.A. 125-130; J.A. 864. Authentication is the process of "produc[ing] evidence sufficient" to demonstrate that an item of evidence "is what the proponent claims it is." Fed. R. Evid. 901(a). The issue "is essentially a question of conditional relevancy": for example, a purported audio recording of the defendant is relevant only if it is in fact the defendant speaking on the tape. *United States* v. *Branch*, 970 F.2d 1368, 1370-1371 (4th Cir. 1992). Authentication is a "condition precedent to admissibility," *id.* at 1370 (citation omitted), and Federal Rule of Evidence 901(a) places the burden of authenticating a document on the document's proponent. *See United States* v. *Kaixiang Zhu*, 854 F.3d 247, 257 (4th Cir. 2017) (per curiam). As a result, "the opponent need not present evidence disputing authenticity in support of an objection on that ground." 31 Wright & Miller § 7104, at 33-35 & n.20 (1st ed. 2000) (citing *United States* v. *Caldwell*, 776 F.2d 989, 1001 n.16 (11th Cir. 1985)).

31

2.    The district court based its sanctions order on the premise that counsel could not have raised an authentication objection in good faith while knowing that Generations' version of the Western Sky agreement was authentic. *See* J.A. 936; *see* J.A. 941-942. That premise is legally incorrect and in any event inapposite here.

a.    To begin with, objecting to an opposing party's failure to carry its burden of proof on a relevant issue is an everyday occurrence in our legal system. As this Court has explained: "Under our adversarial system, litigants are not their opponents' keepers. They have no duty to help their opponents maximize their recovery or prevent them from losing their claims." *In re Jemsek Clinic, P.A.*, 850 F.3d 150, 159 (4th Cir. 2017).

For example, under the well-established "four-corners rule," a court considering a motion to dismiss looks only at the plaintiff's complaint and any documents either attached or integral to it. *See, e.g.*, *CACI International, Inc.* v. *St. Paul Fire & Marine Insurance*, 566 F.3d 150, 154 (4th Cir. 2009). Defendants filing motions to dismiss are under no obligation to limit their arguments to those for which they are unaware of contrary evidence.

Similarly, on a motion for summary judgment based on failure to prove an element of the claim, the moving party "need not produce evidence" to support its motion; instead, it can simply hold the opposing party to its burden. *Cray Communications, Inc.* v. *Novatel Computer Systems, Inc.*, 33

32

F.3d 390, 393 (4th Cir. 1994) (citation omitted). If the opposing party cannot satisfy its burden, summary judgment is proper. *See, e.g., Pleasurecraft Marine Engine Co.* v. *Thermo Power Corp.*, 272 F.3d 654, 658 (4th Cir. 2001). Courts will not revisit the entry of summary judgment simply because the losing party "failed to request [relevant] documents." *Zurich North America* v. *Matrix Service, Inc.*, 426 F.3d 1281, 1292-1293 (10th Cir. 2005); *see also Lepore* v. *Vidockler*, 792 F.2d 272, 274 (1st Cir. 1986) (same).

The same issue arises in the context of motions for judgment as a matter of law at trial. Once trial begins, "the full record developed in court supersedes the record existing at the time of the summary-judgment motion." *Ortiz* v. *Jordan*, 562 U.S. 180, 184 (2011). In some circumstances, therefore, a party can obtain a directed verdict even if it is aware of evidence in the discovery record that might permit the opposing party to reach the jury. *See Figueroa* v. *Mazza*, 825 F.3d 89, 98-99 n.8 (2d Cir. 2016). There is no legal rule that it is sanctionable to move for a directed verdict in that situation simply because the moving party knows the opposing party *could have* carried its burden of proof but did not.

While this appeal arises in the specific procedural context of pre-discovery motion practice, counsel's authentication objection is no different from the motions discussed above. Generations had the burden of coming forward with evidence to establish the existence of an agreement to arbitrate

that covers the dispute at hand. *See Adkins*, 303 F.3d at 500-501. Generations, however, passed up the opportunity to conduct arbitration-related discovery and chose not to support its documentation with a supporting affidavit. An authentication objection in these circumstances is no different from a motion to dismiss a defectively pleaded claim or a motion for summary judgment based on failure to prove an element of the claim: it simply demands that the party with the burden come forward with the requisite evidence to satisfy its burden. *See* J.A. 755 (expert declaration of Professor Beskind). The mere fact that the objecting or moving party possesses contrary evidence does not render the act of putting the opposing party to its burden an act of bad faith.

Indeed, litigants routinely raise authentication objections without going further and affirmatively asserting that the objected-to evidence is not authentic. For example, in *McConathy* v. *Dr. Pepper/Seven Up Corp.*, 131 F.3d 558 (5th Cir. 1998) (per curiam), counsel for the plaintiff objected to the admission of the plaintiff's own application for social security benefits, even though the plaintiff produced the document during discovery; the document contained her signature; she did not claim the document was inauthentic; and she admitted that she had applied for social security benefits. *Id.* at 562. The court did not hint that the objection warranted sanctions. Other courts of appeals have upheld the exclusion of evidence on authentication grounds

34

even when the objecting party had produced the excluded document during discovery. *See Cramer* v. *NEC Corp. of America*, 496 Fed. Appx. 461, 464 (5th Cir. 2012) (per curiam); *Taylor* v. *Principi*, 141 Fed. Appx. 705, 708 (10th Cir. 2005); *see also Tuggerson* v. *Henderson*, 36 Fed. Appx. 605, 606 (9th Cir. 2002). In so doing, those courts have not suggested that an objection in those circumstances risks incurring sanctions.

It would be especially odd for a duty to waive the requirement of authentication to exist here, where the issue arose before discovery had even begun. The Civil Rules, after all, provide a specific procedure to prompt such waivers during discovery. A party can demand that an opposing party concede any authentication objection related to a given piece of evidence; if the opposing party refuses but the evidence is found authentic at trial, the refusing party risks incurring sanctions. *See* Fed. R. Civ. P. 36(a)(1)(B), 37(c)(2). It would be most peculiar for attorneys to have a duty to waive the requirement of authentication before discovery when the Civil Rules designate discovery as the stage at which such waivers should occur.

The district court cited three cases outside the Fourth Circuit to support its holding that a party cannot raise an authentication objection in good faith while knowing the objected-to document is authentic. J.A. 936. Notably, however, each of those cases involved challenges made after discovery was complete and a record establishing authenticity had been developed. *See*

35

*Baulch* v. *Johns*, 70 F.3d 813, 817 (5th Cir. 1995); *Fenje* v. *Feld*, 301 F. Supp. 2d 781, 789, 809-810, 817 (N.D. Ill. 2003), *aff'd*, 398 F.3d 620 (7th Cir. 2005); *In re Interstate Steel Setters, Inc.*, 65 B.R. 312, 313 (Bankr. N.D. Ill. 1986). In *Fenje*, the case on which the district court principally relied, J.A. 936, the court was not considering sanctions at all. *See* 301 F. Supp. 2d at 789. Indeed, to the extent the *Fenje* court discussed whether a party acted in good faith in objecting to its opponent's failure to authenticate a document that the party "nevertheless kn[ew]" to be authentic, it is unclear what role that discussion ultimately played in the court's analysis. *Id.*

The other two cases fall squarely into recognized (and distinguishable) categories of sanctionable conduct. In *Baulch*, the authentication objection was frivolous on its face; the party proffering the evidence had already provided ample support for the document's authenticity, and the objecting party sought to rely on the same document. 70 F.3d at 817.[4] As a result, the authentication objections had "absolutely no chance of success." *Hunter*, 281 F.3d at 153. And in *Interstate Steel Setters*, the attorney "misrepresented to the Court that he did not know whether or not the documents were authentic," despite knowing they were authentic because he "personally furnished

---

[4] Although *Fenje* did not involve sanctions, the party raising the authenticity challenge there did so against the backdrop of a developed discovery record supporting the authenticity of the documents in dispute. *See* 301 F. Supp. 2d at 809-810.

the originals of those very documents to Plaintiff's attorney for inspection and photocopying." 65 B.R. at 313. It is unsurprising that a court would sanction attorneys for "knowingly . . . mak[ing] a false statement of fact" to the court. Model Rule of Prof'l Conduct 3.3(a)(1). Counsel's pre-discovery conduct here bears no resemblance to the sanctioned conduct in either case.

b.    In any event, the district court's premise that a party who knows a document is authentic cannot raise an authentication objection is inapposite here. Counsel did not "know" that Generations' purported copy of the loan agreement was authentic; only a copy of the loan agreement Mr. Dillon accepted on Western Sky's website *at the time he took out the loan* would be authentic. *See Craig* v. *Kessing*, 253 S.E.2d 264, 266 (N.C. 1979); *Whitney* v. *Wyman*, 101 U.S. 392, 396 (1879).

Generations provided no evidence that its version of the agreement fit that bill. And the Delbert Services version that Mr. Dillon provided counsel gave them additional reason to think that Generations' version matched the original terms only insofar as the two versions shared the same terms with each other. That still left the very real possibility that *both* versions did not match the original agreement, either because the terms of the electronic contract were modified or Mr. Dillon's information had been transposed onto another agreement. Either of those errors (whether by accident or by malfeasance) could have happened at Western Sky, or somewhere else in the

37

chains of custody between Western Sky and Generations or Delbert Services.[5]

Accordingly, counsel did not know that Generations' version of the agreement was authentic. To the contrary, as Professor Saltzburg explained in his affidavit, "there was no admissible evidence that the Generations' document was authentic and no reason for Dillon or his lawyers to believe that it was." J.A. 765. The version provided by Mr. Dillon did not alter that belief because, as Professor Bradley stated, it was evident on the face of the document that it had not originated from the Western Sky website." J.A. 736. At most, counsel possessed evidence that tended to support but did not establish the authenticity of Generations' version of the agreement; the district court stopped short of suggesting that raising an authentication objection under those circumstances was improper.

---

[5] To be sure, if Mr. Dillon had printed the Delbert Services version on the day that he took out the loan, that would lead to a stronger inference that Generations' version was authentic, because the risk of modification decreases when there is less time for the agreement to be altered. But the district court conspicuously did not make any such finding. *See* J.A. 920 & n.4, 942 n.17. And, as explained above, *see* pp. 5-6, 20, the objective evidence suggested that Mr. Dillon did not print the copy on the day of the loan.

**B.      Counsel Had No Affirmative Duty To Disclose The Version
Of The Western Sky Agreement Obtained From Their Client**

The district court ruled in the alternative that, once counsel raised the
authentication objection, they had an affirmative duty to disclose the version
of the agreement they had obtained from Mr. Dillon to the court and to Generations even though the parties had not engaged in any discovery.  *See* J.A.
956.  That holding was also erroneous, because no such duty exists either under the applicable ethical rules or under the Federal Rules of Civil Procedure.

***1.      The Applicable Ethical Rules Did Not Impose An Affirmative Duty To Disclose***

Counsel acted consistently with their ethical obligations in not producing the version of the agreement they received from Mr. Dillon in the course
of objecting to Generations' failure to authenticate their version of the
agreement.

a.      Based on the Model Rules of Professional Conduct, North Carolina Rule of Professional Conduct 3.3 requires attorneys to act with candor
toward the tribunal.  *See* M.D.N.C. Local Rule 83.10e(b) (requiring attorneys
practicing in the Middle District of North Carolina to comply with the North
Carolina Rules of Professional Conduct).  In relevant part, the rule provides
that "[a] lawyer shall not knowingly  .  .  .  make a false statement of material fact or law to a tribunal or fail to correct a false statement of material

39

fact or law previously made to the tribunal by the lawyer." N.C. Rule of Prof'l Conduct 3.3(a)(1).

Nothing in Rule 3.3 requires an attorney affirmatively to disclose adverse evidence to the court or the opposing party when advancing a legal position on the client's behalf. Instead, the rule merely prohibits the making of a "false statement of material fact," the failure to correct a prior "false statement of material fact," and the offering of "evidence that the lawyer knows to be false." Not disclosing adverse evidence does not fall into any of those categories.

Not surprisingly, the North Carolina State Bar Council has determined that the duty of candor does not require an attorney to proffer adverse evidence in adversary proceedings.[6] In a 1996 ethics opinion, the Council addressed a scenario in which the attorney had obtained two medical reports regarding the client's injuries, one favorable and one not, and disclosed only the favorable report at the hearing. *See* N.C. State Bar, Ethics Op. RPC 230 (1996), 1996 WL 282163, at *1-2. Analyzing a prior but substantially similar version of Rule 3.3, the Council advised that the attorney's failure to disclose

---

[6] In 1997, North Carolina amended its ethics rules. Those rules provide, *inter alia*, that, "[i]n an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse." N.C. Rule of Prof'l Conduct 3.3(d).

40

the adverse report did not violate the duty of candor. *See id* at \*2.; Adden-

dum (N.C. Rule of Prof'l Conduct 7.2(a) (1995)).  "In general," the Council

explained, "there is no ethical duty to volunteer adverse evidence to a tribu-

nal absent a law or court order requiring disclosure."  1996 WL 282163, at \*2.

"The lawyer must present the evidence that best advances the client's case,"

the Council said, as long as the lawyer presents the case in "good faith."  *Id.*

It is therefore clear that, as Professor Bradley concluded, counsel had no ob-

ligation under the North Carolina ethical rules to disclose the version of the

agreement they had obtained from Mr. Dillon to the court and Generations

when they raised their authentication objection.  *See* J.A. 734-737.

b.    Federal common law also imposes on attorneys in federal court a

"general duty of candor and good faith" designed to "protect the integrity of

the entire judicial process."  *United States* v. *Shaffer Equipment Co.*, 11 F.3d

450, 458 (4th Cir. 1993).  But that duty did not require counsel to disclose

their version of the agreement either.

The federal duty of candor requires attorneys to disclose facts adverse

to their client only under certain exceptional circumstances.  *See Shaffer*, 11

F.3d at 458.  That duty most often arises with respect to facts that implicate

a court's subject-matter jurisdiction.  *See, e.g.*, *Tiverton Board of License*

*Commissioners* v. *Pastore*, 469 U.S. 238, 240 (1985) (per curiam); *BEM I,*

*L.L.C.* v. *Anthropologie, Inc.*, 301 F.3d 548, 551 (7th Cir. 2002) (compiling

41

cases). That makes sense, because "lawyers who practice in federal court have an obligation to assist the judges to keep within the boundaries fixed by the Constitution and Congress." *BEM I*, 301 F.3d at 551. Accordingly, the federal duty of candor also extends to the disclosure of facts that show that asserted claims have been enjoined or that reveal significant litigation misconduct. *See Jemsek Clinic*, 850 F.3d at 155, 157 (affirming sanctions when defense counsel did not disclose injunction of claims ordered in separate class-action case); *Shaffer*, 11 F.3d at 453-456, 459-461 (affirming sanctions when counsel "obstruct[ed] the defendants' efforts to uncover [a critical witness's] perjury and . . . fail[ed] themselves to reveal it").

None of those circumstances is present here. Like state law, federal law does not impose a general obligation on attorneys to produce adverse evidence when making a legal argument on a client's behalf. Such an obligation would turn dispositive motion practice on its head. *See* pp. 32-33, *supra*.

### 2. *The Federal Rules Of Civil Procedure Do Not Impose An Affirmative Duty To Produce Any Documents Before The Initial Discovery Conference*

Title V of the Federal Rules of Civil Procedure, entitled "Disclosures and Discovery," sets out the obligations of civil litigants to produce documents in federal litigation. *See* Fed. R. Civ. P. 26-37. The typical way in which one party obtains documents from another, of course, is by serving a

document request.  *See* Fed. R. Civ. P. 34(a); 8B Wright & Miller § 2207, at 137-138 (3d ed. 2010).

The most prominent other way in which parties exchange documents is through Rule 26(a), which creates limited disclosure obligations.  But disclosures are not due, and no discovery can be sought, until the parties participate in the initial discovery conference contemplated by Rule 26(f).  *See* Fed. R. Civ. P. 26(a)(1)(C), (d)(1); *Willis* v. *Town of Marshall*, 426 F.3d 251, 264 n.5 (4th Cir. 2005).  And where, as here, motion practice occurs before the Rule 26(f) conference, the parties are "constrained to respond  .  .  .  without the benefit of discovery."  *Greater Baltimore Center for Pregnancy Concerns, Inc.* v. *Mayor & City Council of Baltimore*, 721 F.3d 264, 275 n.5 (4th Cir. 2013) (en banc).

As the foregoing rules make clear, the Federal Rules of Civil Procedure set out clear procedures for discovery and disclosures, under which a party has no duty to produce documentary evidence contrary to a legal position it takes in response to a pre-answer motion to dismiss based on the asserted existence of a binding arbitration agreement.  Discovery requests are not even permitted before the Rule 26(f) conference, *see* Fed. R. Civ. P. 26(d)(1), and disclosures are not yet due, *see* Fed. R. Civ. P. 26(a)(1)(C).  And even if it were otherwise, the Federal Rules of Civil Procedure do not require the unilateral disclosure of documents simply because they are adverse to a

43

party's interests.  By holding that counsel had an affirmative obligation to produce the version of the agreement they had obtained from Mr. Dillon, the district court erred as a matter of law.  That error warrants vacatur of the district court's sanctions order.

## II.    THE DISTRICT COURT FURTHER ERRED BY HOLDING THAT COUNSEL COULD NOT OBJECT IN GOOD FAITH TO GENERATIONS' RENEWED MOTION TO DISMISS

After the district court denied Generations' initial motion to dismiss, Generations filed a renewed motion to dismiss in which it finally attempted to authenticate the agreement by submitting an affidavit.  J.A. 326.  Generations did so without citing any authority permitting it to file such a motion. J.A. 325-327.  Counsel in turn argued that Generations' motion was appropriately characterized as a motion for reconsideration under Federal Rule of Civil Procedure 54(b), and opposed the motion on the ground that Generations had not satisfied any of the exceptions to the law-of-the-case doctrine. J.A. 369; *see* J.A. 360-361.

In imposing sanctions, the district court ruled that counsel had acted in bad faith by raising that argument.  J.A. 949-950.  Again, that was erroneous as a matter of law.  Counsel made a legal argument, one that the district court credited (though it was later reversed by this Court).  That is hardly a legal position that "a reasonable attorney in like circumstances could not

have believed . . . to be legally justified." *Hunter*, 281 F.3d at 153 (internal quotation marks and citation omitted).

1.    Rule 54(b) provides district courts with discretion to reconsider interlocutory orders "at any time before the entry of [final] judgment." Fed. R. Civ. P. 54(b); *see Carlson* v. *Boston Scientific Corp.*, 856 F.3d 320, 325 (4th Cir. 2017). That discretion, however, "is not limitless," *id.*; it is "guid[ed]" by the law-of-the-case doctrine, *American Canoe Ass'n* v. *Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003). The law-of-the-case doctrine "generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Musacchio* v. *United States*, 136 S. Ct. 709, 716 (2016) (internal quotation marks and citation omitted). The doctrine precludes courts from reconsidering interlocutory orders unless (1) newly discovered evidence arises, (2) the applicable law changes, or (3) the earlier order is clearly erroneous and causes "manifest injustice." *Carlson*, 856 F.3d at 325 (citation omitted).

Counsel argued that Generations' renewed motion to dismiss did not satisfy any of those exceptions; those arguments were reasonable and made in good faith. Counsel first argued that Generations' affidavit did not constitute "newly discovered evidence" because Generations did not show that the affidavit was impossible to obtain earlier. J.A. 363-365. Case law supported counsel's position. *See, e.g., Cray Communications*, 33 F.3d at 395; *RGI, Inc.*

45

v. *Unified Industries, Inc.*, 963 F.2d 658, 662 (4th Cir. 1992); *see also* J.A. 363-364 (citing additional cases from the Middle District of North Carolina).

Counsel further argued that no "manifest injustice" would result from the earlier order because the ruling was correct. Counsel had a good-faith basis there too: Generations had chosen to proceed on its original motion without any evidence to authenticate the document on which it was relying. *See* pp. 6-10, *supra*. Nor did Generations argue that the applicable law had changed. Counsel thus had a good faith and non-frivolous basis to argue that Generations was not entitled to reconsideration.

This Court's treatment of Generations' interlocutory appeal confirms that counsel's arguments were made in good faith and, while ultimately not successful, had substantial merit. On appeal, counsel made the same basic points regarding the law-of-the-case doctrine and the applicability of Rule 54(b). *See* 14-1728 Br. of Appellee 20-52 (Nov. 26, 2014). This Court heard oral argument, *see* Fed. R. App. P. 34(a)(2), and ultimately reversed the district court in a published opinion, *see* 787 F.3d 707 (2015). Although the Court disagreed with counsel's position, there was no suggestion that the Court found counsel's argument to be frivolous or not colorable.

2.    The district court suggested that counsel should have "consent[ed]" to reconsideration because they "knew or should have known" that the court would reconsider its prior ruling once counsel produced the Delbert

46

Services version of the agreement in discovery. *See* J.A. 950. That is a per-plexing suggestion. To begin with, even if counsel may have taken a different position in response to a *subsequent* motion, it would not follow that counsel lacked a good-faith basis for its objection at the time of the *present* motion.

Counsel's argument that Generations had not complied with its proce-dural obligations, which the district court had credited, would have remained valid regardless of when counsel produced the Delbert Services version. The predicate for that argument remained unchanged: Generations had still moved to dismiss without any support for the authenticity of its version of the contract. If Generations had moved to dismiss again based on the Del-bert Services version, it would merely have underscored that Generations had wasted the Court's and parties' time both by foregoing discovery on the original (and subsequent) motions, *see* J.A. 201, and by not attempting to au-thenticate their version of the loan agreement in the first place. And a mo-tion to dismiss utilizing the Delbert Services version would still not meet the burden of establishing that the Generations version was authentic. Only in-formation showing that the Generations version matched the terms Mr. Dil-lon had agreed to on Western Sky's website would have satisfied the authen-tication requirement. In fact, if not for intervening case law on the uncon-scionability issue, counsel may have pursued discovery to establish that nei-ther the Generations version nor the Delbert Services version was authentic.

In any event, counsel would have had substantial arguments against any subsequent motion to dismiss—as evidenced by the fact that such a motion was later denied. To be sure, counsel no longer pursued their authentication objection after the remand from this Court, but that is because they opted for the compelling (and ultimately successful) argument that the Western Sky arbitration provision was unconscionable.

In sum, counsel had a good-faith legal basis for the arguments they made in response to the renewed motion to dismiss, and they had no duty to forgo those arguments simply because the district court may have reached a different ruling on a different motion that counsel might have opposed (and ultimately did oppose) using different arguments. The district court erred as a matter of law in holding that counsel's conduct in connection with the renewed motion to dismiss was sanctionable, and its sanctions order should be vacated for that reason as well.

## III. THE DISTRICT COURT CLEARLY ERRED BY FINDING CLEAR AND CONVINCING EVIDENCE THAT COUNSEL ACTED IN BAD FAITH

As the district court correctly recognized, sanctions either under 28 U.S.C. § 1927 or under a court's inherent authority are proper only if the record contains clear and convincing evidence that counsel acted in bad faith. J.A. 935; *see, e.g.*, *Parsi* v. *Daioleslam*, 778 F.3d 116, 131 (D.C. Cir. 2015); *Lawyers Title Insurance* v. *Doubletree Partners, L.P.*, 739 F.3d 848, 872 (5th

48

Cir. 2014); *see also Eisemann* v. *Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (per curiam) ("clear evidence"). "Whether a finding is clearly erroneous must be viewed in light of the burden of proof." *Estate of Lisle* v. *Commissioner*, 341 F.3d 364, 369 (5th Cir. 2003), *modified on other grounds*, 431 F.3d 439 (5th Cir. 2005). A finding made under the clear-and-convincing-evidence standard may be clearly erroneous even though the same finding would not be clearly erroneous under the preponderance-of-the-evidence standard. *Id.* If, for example, the record contains "contradictory testimony" on the question whether an attorney acted in bad faith, clear and convincing evidence may not exist. *Crowe* v. *Smith*, 261 F.3d 558, 566 (5th Cir. 2001).

The district court's finding of bad faith was based principally on its inference that counsel "intended to hide and did hide relevant facts from the Court and opposing counsel for almost two years." J.A. 952. The court made that inferential leap only by picking out isolated events that do not alone demonstrate bad faith, and certain undisputed facts weigh heavily against the court's inference. *First*, counsel's submissions to the district court all occurred in the context of pre-discovery motions practice; as discussed above, no ethical rule or Federal Rule of Civil Procedure required counsel to produce the document before they in fact did so. *See Association of American Physicians & Surgeons, Inc.* v. *Clinton*, 187 F.3d 655, 660-661 (D.C. Cir. 1999) (per curiam) (reversing a finding of bad faith by clear and convincing

49

evidence where counsel did not act in violation of a duty). *Second*, counsel produced the document in the course of the parties' exchange of documents. *Third*, in Mr. Dillon's deposition, which defense counsel scheduled to take place before that exchange, Mr. Dillon testified immediately and without coaxing that he had possessed a version of the agreement and had provided it to counsel. J.A. 1305.

Against those facts, the district court's finding that there was clear and convincing evidence that counsel intended to hide facts from the court was "plainly wrong." *Jiminez* v. *Mary Washington College*, 57 F.3d 369, 379 (4th Cir. 1995). The necessary element of bad faith thus is not present, and vacatur of the district court's sanctions order is warranted on that independent basis.

1.    The district court based its finding that counsel had deliberately withheld their version of the agreement principally on counsel's failure to disclose the document until discovery. *See, e.g.*, J.A. 940, 941, 943, 948, 950, 951, 952. As discussed above, however, counsel had no duty to disclose their version of the agreement during pre-discovery proceedings. *See* pp. 39-44. Lawyers do not "hide" a document that they do not produce when they are under no obligation to do so. Nor do lawyers regularly attach documents from their own files in responding to pre-discovery motions, especially in support of a purely legal argument that the opposing party has failed to meet

50

its burden (here, the burden of authentication). Accordingly, any inference that counsel intended to hide the document is weak at best.[7]

2. The district court also pointed to counsel's conduct during the motion-to-dismiss hearing. *See* J.A. 944-945, 948. But that conduct sheds little light on whether counsel was attempting to withhold their version of the agreement.

At the start of the hearing, the district court told defense counsel that it "read the plaintiff's brief as challenging the[] authenticity [of Generations' copy of the agreement] . . . [because] [t]hey said things like there is no proof these are authentic and we object." J.A. 206. In its sanctions order, the court faulted counsel for not "correct[ing] the [c]ourt's stated perception that they had challenged authenticity." J.A. 941. But the nature of counsel's

---

[7] The district court made another questionable inferential leap when it determined that counsel's *law firms* had acted in bad faith merely because (in the court's view) counsel had. *See* J.A. 1429-1431. At least one of this Court's sister circuits has held that "[b]ad faith is personal and may not automatically be visited on others," including a sanctioned attorney's law firm merely because the attorneys were practicing there when they engaged in the conduct at issue. *Wolters Kluwer Financial Services, Inc.* v. *Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) (internal quotation marks and citation omitted). This Court too has questioned whether "sanctions against an entire firm rather than against the individual lawyers who acted improperly" are appropriate. *Blue* v. *Department of the Army*, 914 F.2d 525, 549 (4th Cir. 1990). Other courts have shown less reticence, however. *Compare, e.g.*, *Glass* v. *Pfeffer*, 849 F.2d 1261, 1267 (10th Cir. 1988).

objection—that Generations failed to carry its initial burden of producing evidence authenticating the document—was clear. Defense counsel responded to the court's question with an accurate description of counsel's argument, J.A. 207, and Mr. Six "agree[d] with" that description, J.A. 227; *see* J.A. 221. Indeed, after the district court denied the initial arbitration motion, Generations still understood the court as having ruled that "Generations had not 'met [its] burden to establish the existence of an agreement to arbitrate'" "because the Loan Agreement had not been authenticated." J.A. 325-326.

The district court further noted Mr. Six's comments that he drafted the complaint without having the Vin Capital loan agreement. J.A. 924, 943-945. To be clear, Mr. Six never stated that counsel did not have any copies of any loan agreements. The district court nevertheless viewed his statements that he did not have the Vin Capital agreement as being part of an effort to conceal the Delbert Services copy of the loan agreement. But those statements also provide scant evidence of bad faith. Mr. Six made those statements in addressing defendants' contention that Mr. Dillon was equitably estopped from arguing that they could not enforce the loan agreements because the complaint relied on those agreements. J.A. 222-239. Mr. Six was simply using the fact that he did not have the Vin Capital agreement as anecdotal support for why the claims did not rely on the agreement: he had been able to draft the complaint without one of the contracts. Mr. Six did not thereby im-

ply anything about whether counsel had a version of the Western Sky agreement in their possession.

3.    The district court next faulted counsel for failing to produce their version of the agreement before or during Mr. Dillon's deposition. *See* J.A. 951.  But the district court never identified an earlier point in which counsel was obligated under the Civil Rules or the schedule in the case to disclose the document, and there is no requirement to disclose documents during a deposition. *See id.*; pp. 42-44, *supra*.  Counsel produced a copy of their version of the agreement, but informed opposing counsel in their cover letter that they were redacting "handwritten notes and facsimile information."  J.A. 699.

The district court viewed those redactions as additional evidence that counsel was attempting to hide their version of the agreement, but that makes little sense.  After all, counsel produced the document.  In any event, the redactions were entirely proper because they reflected communications between attorney and client in the context of anticipated litigation.  J.A. 833 n.2.[8]  Nor was the redacted information relevant to the *arbitration-related* discovery that was ordered.  J.A. 437-438.  Redactions for relevance are commonplace. *See, e.g.*, *Miller* v. *Target Corp.*, Civ. No. 15-10721, 2017 WL

---

[8] In any event, counsel later waived any assertion of privilege over the redacted portions. *See* J.A. 517, 520-525, 662.

53

74276, at *1 (D. Mass. Jan. 6, 2017); *Washington* v. *Follin*, Civ. No. 14-416, 2016 WL 1614166, at *9 nn. 21-24 (D.S.C. Apr. 22, 2016).

4.    The district court finally stated that counsel's arguments during the sanctions proceedings were "*post hoc* explanations" that revealed a bad-faith intent to withhold their version of the agreement. J.A. 945. The court's reasoning was fundamentally flawed.

The district court suggested that counsel knew that Mr. Dillon printed out the Delbert Services version of the agreement when he first took out the loan. J.A. 946. As noted above, however, the court conspicuously avoided making a factual finding as to when Mr. Dillon had printed the version he sent to counsel. *See* p. 21; J.A. 942 n.17, 953. And Mr. Dillon's deposition testimony on when he printed the document was equivocal and contradictory. *See* pp. 15-17 *supra*.

The district court appears to have concluded that counsel must have thought Mr. Dillon had printed the document when he first took out the loan, based on counsel's questions to him at his deposition regarding why he may have printed the Western Sky agreement but not others. J.A. 946; J.A. 1352. But Mr. Dillon testified that, while he may have sent a copy of the loan agreement to Western Sky, he did not retain "a copy of what [he] sent in." J.A. 1356-1357. Most importantly, the face of that document indicates that it was not printed when Mr. Dillon first took out the loan, and Mr. Dillon did

not produce the document to counsel with his initial collection of documents. J.A. 838, 842. There were therefore objective reasons to believe that Mr. Dillon did not print the document until later.

\*    \*    \*    \*    \*

Once the notion that counsel had a duty to produce their version of the agreement before discovery is stripped away, the evidence that counsel attempted to hide that version in bad faith is anything but clear and convincing. Counsel had a good-faith basis for their statements during the motion-to-dismiss hearing and their conduct during discovery, and their overall conduct fell well within the bounds of normal, zealous advocacy, as three prominent experts concluded. Nor did counsel's actions during the sanctions proceedings reveal a bad-faith intent to withhold their version of the loan agreement. The district court's sanctions order rested on its key factual finding of bad faith, and that finding was clearly erroneous. The sanctions order should be vacated on that basis, as well as for the legal errors discussed above.

## CONCLUSION

The district court's sanctions order should be vacated.

Respectfully submitted.

/s/ Kannon K. Shanmugam

KANNON K. SHANMUGAM
JOHN S. WILLIAMS
WILLIAM T. MARKS
WILLIAMS & CONNOLLY LLP
  *725 Twelfth Street, N.W.*
  *Washington, DC 20005*
  *(202) 434-5000*
  *kshanmugam@wc.com*

JULY 12, 2017

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully submit that, given the complexity and novelty of the issues presented, oral argument would be helpful to the disposition of this appeal.  *See* 4th Cir. Local Rule 34(a).

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, Kannon K. Shanmugam, counsel for appellants Stephen N. Six; Darren Todd Kaplan; John Austin Moore; Stueve Siegel Hanson LLP; and the Darren Kaplan Law Firm, P.C., and a member of the Bar of this Court, certify, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B), that the attached Brief of Appellants is proportionately spaced, has a typeface of 14 points or more, and contains 12,956 words.

/s/ Kannon K. Shanmugam

KANNON K. SHANMUGAM

JULY 12, 2017

## CERTIFICATE OF SERVICE

I, Kannon K. Shanmugam, counsel for appellants Stephen N. Six; Darren Todd Kaplan; John Austin Moore; Stueve Siegel Hanson LLP; and the Darren Kaplan Law Firm, P.C., and a member of the Bar of this Court, certify that, on July 12, 2017, a copy of the attached Brief of Appellants was filed with the Clerk and served on the parties through the Court's electronic filing system. I further certify that all parties required to be served have been served.

/s/ Kannon K. Shanmugam
KANNON K. SHANMUGAM

JULY 12, 2017

# Addendum

# NORTH CAROLINA
# RULES OF PROFESSIONAL CONDUCT

## 1996

**Reprinted from**
**Annotated Rules of North Carolina,**
**1996 Edition**



DUKE UNIVERSITY SCHOOL OF LAW LIBRARY

Michie
Charlottesville, Virginia
1996

KFN
7476.5
.A43
1996

COPYRIGHT © 1994, 1995, 1996

BY

MICHIE,

A DIVISION OF REED ELSEVIER INC.

AND REED ELSEVIER PROPERTIES INC.

————————

All rights reserved.

"Michie" and the Open Book and Gavel logo are trademarks of
Michie, a division of Reed Elsevier Inc.

07-30-96

## Rule 7.2 Representing the Client Within the Bounds of the Law.

(a) In representing a client, a lawyer shall not
    (1) file a suit, assert a position, conduct a defense, controvert an issue, delay a trial, or take other action on behalf of the client when the lawyer knows or when it is obvious that such action would be frivolous or would serve merely to harass or maliciously injure another;
    (2) knowingly advance a claim or defense that is unwarranted under existing law, except that the lawyer may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend as to require that every element of the case against the client be established;
    (3) conceal or knowingly fail to disclose that which the lawyer is required by law to reveal;
    (4) knowingly make a false statement of law or fact;
    (5) knowingly use perjured testimony or false evidence;
    (6) participate in the creation or preservation of evidence when the lawyer knows or it is obvious that the evidence is false;
    (7) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value;
    (8) counsel or assist the client in conduct that the lawyer knows to be illegal or fraudulent;
    (9) knowingly engage in other illegal conduct or conduct contrary to a disciplinary rule;
(b) A lawyer who receives information clearly establishing that
    (1) his or her client intends to or has, in the course of the representation, perpetrated a fraud upon a person or tribunal shall promptly call upon the client to rectify the same, and, if the client refuses or is unable to do so, the lawyer shall discontinue representation of the client in that matter; and if the representation involves litigation, the lawyer shall (if applicable rules require) request the tribunal to permit him or her to withdraw, but without necessarily revealing the reason for wishing to withdraw;
    (2) a person other than his or her client has perpetrated a fraud upon a tribunal shall promptly reveal the fraud to the tribunal.

### COMMENT

The advocate's task is to present the client's case with persuasive force. Performance of that duty while maintaining confidences of the client is qualified by the advocate's duty of candor to the tribunal. However, an advocate does not vouch for the evidence submitted in a cause; the tribunal is responsible for assessing its probative value.

An advocate is responsible for pleadings and other documents prepared for litigation, but is usually not required to have personal knowledge of matters asserted therein, for litigation documents ordinarily present assertions by the client, or by someone on the client's behalf, and not assertions by the lawyer. However, an assertion purporting to be of the lawyer's own

knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry. There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation. The obligation prescribed in Rule 7.1(a)(4) of this chapter not to counsel a client to commit or assist the client in committing a fraud applies in litigation.

When evidence that a lawyer knows to be false is provided by a person who is not the client, the lawyer must refuse to offer it regardless of the client's wishes. If the false evidence is introduced before the lawyer discovers its

63

Canon VII                RULES OF PROFESSIONAL CONDUCT                Canon VII

falsity, the lawyer shall reveal the fraud to the tribunal.

When false evidence is offered by the client, however, a conflict may arise between the lawyer's duty to keep the client's revelations confidential and the duty of candor to the court. Upon ascertaining that material evidence is false, the lawyer should seek to persuade the client that the evidence should not be offered or, if it has been offered, that its false character should immediately be disclosed. If the persuasion is ineffective, the lawyer must seek to withdraw.

---

**History Note:** Statutory Authority G.S. 84-23, Readopted Effective December 8, 1994.

**Cross References.** — See DR7-102 and Model Rules 3.1, 3.2 and 3.3.

**Editor's Note.** — Rule 7.2 incorporates the provisions of former DR7-102 and addresses one additional matter. Rule 7.2(A)(7) prohibits a lawyer from obstructing another party's access to evidence.

As opposed to Model Rule 3.3, which would require a lawyer to disclose his client's perjury to the court, Rule 7.2(B) merely requires the lawyer to seek to withdraw if his client cannot be persuaded to correct his own perjured testimony.

**Legal Periodicals.** — For article on the criminal defendant who proposes or commits perjury, see 17 N.C. Cent. L.J. 157 (1988).

## CASE NOTES

**It is not improper for an attorney to prepare his witness for trial,** to explain the applicable law in any given situation and to go over before trial the attorney's questions and the witness' answers so that the witness will be ready for his appearance in court, will be more at ease because he knows what to expect, and will give his testimony in the most effective manner he can. Such preparation is the mark of a good trial lawyer, and is to be commended because it promotes more efficient administration of justice and saves court time. Nothing improper occurs so long as the attorney prepares the witness to give the witness' testimony at trial and not the testimony that the attorney has placed in the witness' mouth or false or perjured testimony. State v. McCormick, 298 N.C. 788, 259 S.E.2d 880 (1979).

**Intentionally encouraging the concealment of material facts** relevant to the identity of the driver in a driving under the influence prosecution is prejudicial to the administration of justice. Such conduct raises serious doubts as to the attorney's desire to bring about a just result in such a prosecution and adversely reflects on the attorney's fitness to practice law. North Carolina State Bar v. Graves, 50 N.C. App. 450, 274 S.E.2d 396 (1981).

**Where an attorney learns, prior to trial, that his client intends to commit perjury** or participate in the perpetration of a fraud upon the court he must withdraw from representation of the client, seeking leave of the court, if necessary. The right of a client to effective counsel in any case (civil or criminal) does not include the right to compel counsel to knowingly assist or participate in the commission of perjury or the creation or presentation of false evidence. In re Palmer, 296 N.C. 638, 252 S.E.2d 784 (1979).

**Failure to Inform Court of Opposing Party's Address.** — An attorney clearly engaged in conduct involving fraud, dishonesty, deceit and misrepresentation when, in a divorce action, she failed to inform the court of a letter which contained the opposing party's return address, while at the same time presenting to the court an affidavit she had drafted in which her client swore that her husband's whereabouts were unknown and could not with due diligence be ascertained. North Carolina State Bar v. Wilson, 74 N.C. App. 777, 330 S.E.2d 280 (1985).

**Interjection of Unsupported Knowledge and Belief.** — Counsel may not, by agreement or cross-examination, place before the jury incompetent and prejudicial matters by injecting his own knowledge, beliefs and personal opinions not supported by the evidence. State v. Locklear, 294 N.C. 210, 241 S.E.2d 65 (1978).

## DISCIPLINARY HEARING NOTES

The attorney knowingly used perjured testimony in an attempt to receive a set-off for federal estate taxes due; failed to keep adequate records and accounts for an incompetent client; perpetrated a fraud upon a Florida court by false testimony; and failed to give a complete and timely accounting to his incompetent client's personal representative. Disbarred. **81 DHC 2.**

The attorney filed pleadings which were not

Canon VII                RULES OF PROFESSIONAL CONDUCT                Canon VII

well grounded in fact or law and falsely certified to the court that he had served the pleadings on opposing counsel. The client later discharged the attorney, who refused to withdraw, refused to return the client's file, and insisted on charging a contingent fee, rather than the reasonable value of his services. Two Year Suspension, with reinstatement conditioned on the attorney passing the bar examination. **90 DHC 22.**

The attorney misrepresented to an administrative law judge and a state agency that he had been advised by the former chief administrative law judge to take certain actions on behalf of his client when, in fact, the attorney had not discussed that client's case with the former judge. Censure. **92 DHC 3.**

## ETHICS OPINION NOTES

**CPR 92.** An attorney who knows that criminal clients gave arresting officers fictitious names should call upon the clients to disclose their true identities to the court and, if they refuse, seek to withdraw.

**CPR 110.** An attorney may not advise client to seek a Dominican divorce knowing that the client will return immediately to North Carolina and continue residence.

**CPR 122.** An attorney representing the defendant in divorce action, when advised by the client that parties have not been separated a year, must file an answer denying the allegation of separation even though the client does not wish to contest the divorce.

**CPR 267.** An attorney may prepare a contractual agreement regarding property for a man and woman who contemplate living together without marriage so long as sexual intercourse is not part of the consideration supporting the agreement.

**CPR 284.** An attorney may seek alimony for a wife although he has evidence of the wife's adultery so long as he does not have to offer perjured testimony or other false evidence.

**CPR 321.** It is improper for an attorney to file motions and pleadings for the mere purpose of delay.

**CPR 351.** An attorney seeking a restraining order is not required to inform a judge that he has previously been denied relief by another judge if the court does not ask. However, good professional practice would dictate that the court be advised.

**RPC 33 (Revised).** If an attorney's client testifies falsely regarding a material matter, such as his or her name or criminal record, the attorney must call upon the client to correct the testimony. If the client refuses, the attorney must seek to withdraw in accordance with the rules of the tribunal.

**RPC 181.** A lawyer may not seek to disqualify another lawyer from representing the opposing party by instructing a client to consult with the other lawyer about the subject matter of the representation when the client has no intention of retaining the other lawyer.

**RPC 182.** A lawyer must disclose to an adverse party with whom the lawyer is negotiating a settlement that the lawyer's client had died.

**RPC 203.** Opinion rules that dismissal of an action alone is not sufficient to rectify the perjury of a client in a deposition and the lawyer must demand that the client inform the opposing party of the falsity of the deposition testimony or, if the client refuses, withdraw from the representation.

**RPC 204 (Revised).** Opinion rules that it is prejudicial to the administration of justice for a prosecutor to offer special treatment to individuals charged with traffic offenses or minor crimes in exchange for a direct charitable contribution to the local school system.

# Rule 7.3 Special Responsibilities of a Prosecutor.

The prosecutor in a criminal or quasi-criminal case shall
    (1) refrain from prosecuting a charge that he or she knows is not supported by probable cause, unless otherwise directed by statutory mandate;
    (2) make reasonable efforts to assure that the accused has been advised of the right to, and the procedure for obtaining, counsel and has been given reasonable opportunity to obtain counsel;
    (3) not seek to obtain from an unrepresented accused a waiver of important pretrial rights, such as the right to a preliminary hearing;
    (4) make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose